UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KENNETH LAMONTE HARDY, SR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:11-cv-1423-TWP-MJD ) |
| RICHARD HOWELL, | ) ) |
| Defendant. | ) |

**ENTRY DISCUSSING MOTION FOR SUMMARY JUDGMENT**

Kenneth Lamonte Hardy, Sr. ("Mr. Hardy") brings this action against Officer Richard Howell ("Officer Howell") of the Muncie Police Department pursuant to 42 U.S.C. § 1983 alleging that Officer Howell improperly used a Taser on him. Officer Howell moves for summary judgment.

**I. STANDARD OF REVIEW**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). To survive summary judgment, the non-moving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in his favor. *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted). *See* Fed.R.Civ.P. 56(c)(1)(A),(B) (both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir.1994). However, "before a non-movant can benefit from a favorable view of the evidence, it must show that there is some genuine evidentiary dispute." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).

Mr. Hardy has not filed a response in opposition to the motion for summary judgment. The consequence of this is that he has conceded the Defendant's version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918,

921-22 (7th Cir. 1994). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## II. FACTS

Consistent with the foregoing, the following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Hardy as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

Richard Howell is employed as a law enforcement officer with the Muncie Police Department. At roll call the morning of September 7, 2009, Officer Howell became aware that there was an open warrant for the arrest of Kenneth Lamonte Hardy, for felony offenses. At approximately 11:37 a.m., Officer Howell was driving his marked police vehicle near a Village Pantry convenience store in Muncie, Indiana when he observed Mr. Hardy in front of the store. Officer Howell was familiar with Mr. Hardy as the two had encountered one another in a prior law enforcement related incident. Upon recognizing Mr. Hardy, Officer Howell, dressed in full police uniform, exited his vehicle and approached him. Mr. Hardy recognized Officer Howell as a law enforcement officer. Officer Howell told Mr. Hardy that he had a warrant for his arrest and that he was being placed under arrest. Mr. Hardy recalls hearing Officer Howell say, "Kenneth Hardy I have a warrant" or "I have a secret warrant for your arrest".

Officer Howell reached for Mr. Hardy's wrists and began to place Mr. Hardy's hands behind his back so that he could handcuff him. Officer Howell grabbed Mr. Hardy's right arm

3

and started to retrieve his handcuffs. As Officer Howell started to place one of Mr. Hardy's arms behind his back, Mr. Hardy physically jerked, moved away and began running. As Mr. Hardy began to flee, he ran west from the store. Mr. Hardy testified he ran because he did not want to go back to jail. At this point, Officer Howell loudly told Mr. Hardy to stop. Mr. Hardy did not stop and continued running away. Mr. Hardy ran southwest from the Village Pantry, toward an alley and a residential area. Officer Howell had not had an opportunity to pat down Mr. Hardy, and being familiar with Mr. Hardy's history, he was concerned Mr. Hardy might be armed. When Officer Howell was within eight to ten feet from Mr. Hardy, Mr. Hardy stopped and turned toward him. When he turned toward Officer Howell, Officer Howell believed that Mr. Hardy intended to fight him.

Officer Howell reached for his Taser and Mr. Hardy turned to run. As he turned, Officer Hardy discharged the Taser, striking Mr. Hardy in either in the back of the head behind his left ear or in his lower back. After being hit by the taser probe, Mr. Hardy fell to the ground, landing face first. In his deposition, Mr. Hardy testified that he cannot tell what happened after he was on the ground and he states everything went black before he hit the ground. In contrast, Officer Howell testified that he gave multiple commands for Mr. Hardy to stay on the ground and on his stomach and warned him he would use the Taser again if he tried to get up and despite his warnings, Mr. Hardy ignored the commands and began to rise up[1]. Officer Howell says he then deployed a second burst that lasted five seconds and Mr. Hardy fell to the ground a second time. Thereafter, Officer Howell did not deploy the Taser again and did not touch Mr. Hardy or use any other force to apprehend Mr. Hardy. Officer Howell then called for EMS and for law enforcement back-up. Two Sergeants arrived to assist, and another officer, Robert Wells,

---

[1] In his briefing (Dkt. 45-6), Officer Howell indicates "Mr. Hardy recalls Officer Howell directing him to stay on the ground or he would be tased again" and directs the Court to Exhibit C page 11, lines 17-18, however no such evidence is contained in Exhibit C or elsewhere in the designated materials.

assisted by sitting Mr. Hardy up and handcuffing him. An ambulance arrived shortly thereafter, the paramedics removed the two taser prongs, and Mr. Hardy was taken away in the ambulance.

Mr. Hardy's fall to the ground caused him to fracture his left eye wall cavity, his left nasal cavity and to split his lip. Mr. Hardy was transported to Ball Memorial Hospital, where he was treated. As a result of the incident and from the open Felony Warrant, Mr. Hardy was arrested for the preliminary charges of Possession of Cocaine, B Felony, Possession of Marijuana, A Misdemeanor, Resisting Law Enforcement, A Misdemeanor, and Battery on a Police Officer, D Felony. Thereafter, Mr. Hardy pleaded guilty to Possession of Cocaine, Possession of Marijuana, and forcibly Resisting Law Enforcement, and he currently is incarcerated within the Indiana Department of Correction.

Since the incident Mr. Hardy has experienced vertigo, some loss of memory, sleep disruption, some blurriness of vision and slurring of speech.

### III.  DISCUSSION

Mr. Hardy's claim of excessive force is brought pursuant to 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n. 3 (1979)). The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest. *Id.* at 394–95.

Officer Howell argues that he is entitled to qualified immunity from Mr. Hardy's claim of excessive force. Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known. *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982). To determine if an official is entitled to qualified immunity, a two-part inquiry is required: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 2155 (2001). Courts may initially address either prong of the two-part test in determining whether the application of qualified immunity precludes suit. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In the context of excessive force claims, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Factors to consider in making a determination of whether the amount of force used to effectuate a seizure is reasonable include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight. *Estate of Escobedo v. Bender*, 600 F.3d 770, 780 (7th Cir. 2010).

Here, the undisputed material facts show that there was a warrant for Mr. Hardy's arrest and that Mr. Hardy actively and forcibly resisted Officer Howell's attempts to arrest him. Officer Howell was familiar with Mr. Hardy and knew Mr. Hardy to have resisted law enforcement on prior occasions, knew that he had been arrested for crimes associated with illegal

drugs, and knew he had been arrested on gun charges. Mr. Hardy forcibly broke free and fled from Officer Howell toward a residential area and in the direction of members of the public. Officer Howell had not been able to perform a pat down search prior to Mr. Hardy's flight and did not know whether Mr. Hardy had a weapon, which would not only be a direct threat to Officer Howell but others in the area. Officer Howell's first Taser discharge was clearly an objectively reasonable response.

As mentioned earlier, after Officer Howell tased him the first time, Mr. Hardy has offered no evidence of what happened next. Officer Howell testified that he tased Mr. Hardy a second time because Mr. Hardy would not stay down. Mr. Hardy has not disputed that he tried to get up despite instructions to stay down. Additionally, Heather Clement witnessed the incident and she testified "Mr. Hardy continued to try and get up and when he got to his knees, Officer Howell used his Taser". (Dkt. 43-5 at 2). That said, the Court finds Officer Howell's actions were reasonable under these circumstances. The continuing use of force is permissible only if the circumstances objectively continue to warrant the use of force. *See Overton v. Hicks*, 2008 WL 2518229 (S.D. Ind. 2008). In *Overton* the court found use of a Taser in light of the plaintiff's perceived resistance in revving the engine of a car surrounded by police who were warning him to comply, was reasonable. Also, *See Jenkins v. City of Lawrence*, 2011 WL 2670830 (S.D. Ind. 2011) (officer entitled to qualified immunity when he used a taser on the plaintiff who resisted arrest). Officer Howell is therefore entitled to qualified immunity on Officer Howell's excessive force claim against him and his motion for summary judgment must be **granted**.


## IV.  CONCLUSION

Officer Howell's motion for summary judgment (Dkt. 42) is **GRANTED**. Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 02/27/2013

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kenneth Lamonte Hardy, Sr., #992868
Plainfield Short Term Offenders Program Facility
501 West Main Street
Plainfield, Indiana  46168

John Vincent Maurovich
COOTS, HENKE & WHEELER
jmaurovich@chwlaw.com

Matthew L. Hinkle
COOTS, HENKE & WHEELER
mhinkle@chwlaw.com

Cory Christian Voight
COOTS, HENKE & WHEELER
cvoight@chwlaw.com